IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Dr. Jeffrey Isaacs | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) |
| United States Department of Justice | ) |
| | ) |
| Defendant. | ) |

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

I. CASE HISTORY

1. Dr. Isaacs was a promising young doctor at Dartmouth Medical School whose medical career was destroyed through abuses of power by Dr. Robert Baughman, a former NIH director and member of the Clinton White House Committee on Counterterrorism during his first semester of medical school at University of Southern California (2006) and later, at his first year of medical residency (2012) he was prevented from seeking justice because of evidence destruction by Dr. Jim Yong Kim, then President of Dartmouth College.

2. On January 12 of 2012, Dr. Isaacs became aware of improper activity, relating back to his time as a medical student, that jeopardized his career as a physician at Dartmouth. He promptly notified Jim Yong Kim, seeking investigation and requesting that all electronic evidence be preserved pursuant to Fed. R. Civ. P. 37. Mere days later, and in spite of this communication, the entirety of his email account and his personal medical records were deleted.

3. The process that lead to the deletion of these records was extraordinary and believed to be felonious evidence destruction. Dartmouth's own IT department notified Dr. Isaacs on January 17, 2012 that an automatic safety mechanism actually detected an instruction to delete the account and had preserved it for ten days. Within that ten-day window, Dr. Isaacs once again wrote to Jim Yong Kim, urgently requesting that he intervene. Dr. Kim chose not to save the emails, and, by the end of January 2012, Dr. Isaacs' medical records and emails had been permanently deleted.

4. As Dr. Isaacs pursued litigation, Dartmouth actively retaliated against him. They terminated his job as a physician without ever holding a Fair Hearing amongst peer physicians -- a crucial bylaw requirement of nearly every academic teaching center, including Dartmouth. Moreover, they terminated him without ever having placed him on formal probation or administrative leave. On top of that, they sent sealed records from his 2006 dispute with the aforementioned Dr. Robert Baughman to the New Hampshire Board of Medicine, effectively unsealing an expunged disciplinary history. That matter -- disclosure of the sealed 2006 records -- had already been adjudicated in Isaacs' favor by the American Academy of Medical Colleges and the New Hampshire Employment Tribunal. Concerned about their own improper receipt of the sealed records, it is believed Dartmouth coerced the NH Board of Medicine to unseal them. To this day, Dartmouth has never acknowledged how they obtained the 2006 sealed records.

5. As Dr. Isaacs became engulfed in a number of legal processes to save his career, he sought assistance directly from the Federal Bureau of Investigations (FBI). Specifically, he notified them of evidence spoliation that effectively diminished his chances of

securing justice in any of the multiple ongoing legal processes and ended his medical career just as it begun.

6. Despite the genuine concern of the Special Agent in Charge at the Pennsylvania field office, no investigation ever occurred. Dr. Isaacs sent a FOIA request, and the FBI merely responded that Isaacs' FBI record (without referencing any of the individuals at Dartmouth) was privileged. A follow up appeal pointed out the deficiencies in the first response, again prompting an arbitrary response by the FBI. To date, no explanation for this failure to investigate was ever provided.

## II. INTRODUCTION

7. This is an action under the Freedom of Information Act (FOIA), 5 U.S.C. §552, the Declaratory Judgment Act, 28 U.S.C. §2201, and brings a Petition for a Writ of Mandamus under 28 U.S.C. §1651. The case addresses the FBI's decision to not investigate crimes reported by Plaintiff.

8. This case seeks declaratory relief that the United States Department of Justice is in violation of the FOIA, 5 U.S.C. §552, for failing to provide Plaintiff all requested records and injunctive relief ordering review of the requested records in their entirety.

9. Additionally, this lawsuit petitions for a Writ of Mandamus under 26 USC §1651, the All Writs Act, requesting that this Honorable Court exercise its authority to ensure the appropriate response to a well-documented crime that directly tampered with evidence, which was already under the jurisdiction of the Department of Justice.

10. This is not the only recent case to involve concern that the FBI turned a blind eye to email destruction by a high-profile official. When the DOJ's discretion to investigate or prosecute appears arbitrary and capricious, especially in the case of a ranking government

or university official with strong ties to the local and Federal government, the District Court is the sole remaining venue to check the integrity and functioning of the DOJ response to such a crime.

11. With a false New Hampshire Board ruling outstanding, and no access to federally funded residency training at Dartmouth, Dr. Isaacs will continue to be estopped from pursuing his chosen profession if these crimes remain uninvestigated.

### III.    JURISDICTION AND VENUE

12. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§552(a)(4)(B) and 552(a)(6)(C)(i). The Court also has jurisdiction over this action pursuant to 28 U.S.C. §§1331, 2201(a) and 2202. Venue lies in this district under 5 U.S.C. §552(a)(4)(B).

13. Jurisdiction and venue is proper for the Petition for Writ of Mandamus under 28 U.S.C. § 1361.

14. Venue is proper in the District under 28 U.S.C. § 1391(b)(2) where the crimes reported by the Plaintiff were referred to the Massachusetts office of the FBI for investigation, and the investigation stopped there.

### IV.    PARTIES

15. Dr. Jeffrey Isaacs is a United States citizen.

16. Defendant United States Department of Justice is a Federal Agency with an address of 950 Pennsylvania Avenue, NW, Washington, DC 20530.

### V.    STATUTORY AND REGULATORY BACKGROUND

17. The FOIA, 5 U.S.C. §552, requires agencies of the federal government to release requested records to the public unless one or more specific statutory exemptions apply.

18. An agency must respond to a party making a FOIA request within 20 working days, notifying that party of at least the agency's determination of which of the requested records it will release, which it will withhold and why, and the requester's right to appeal the determination to the agency head. 5 U.S.C. §552(a)(6)(A)(i).

19. Under 28 U.S.C. §1651 citizens can petition a judicial authority to order a government agency to correct its previous illegal behavior in order to comply with the law.

## VI. FACTUAL BACKGROUND

20. The Plaintiff's history leading up to his request to the FBI for an investigation into the crimes perpetrated against him is a long and torrid one.

21. Through Dr. Jeffrey Isaacs' four-year medical school career he was a successful student physician.

22. His medical training included clerkship training at St. George's University London, Cleveland Clinic and Mt. Sinai School of Medicine (NY). Dr. Isaacs received strong reviews, mostly honors, from supervising professors at more than twelve different clerkships at the aforementioned institutions.

23. Dr. Isaacs received his medical degree in 2010 after he placed in the top decile on the highly competitive United States Medical Licensure Exam Step 1.

**DELETION OF EVIDENCE, PERJURY AND OBSTRUCTION OF JUSTICE**

24. This section details those crimes that Dr. Isaacs requested the Department of Justice to investigate. To the extent the FBI denies knowledge of any of these pleaded facts, they are hereby also submitted as evidence for any ongoing investigation.

25. Dr. Isaacs began his medical training at Dartmouth College in July 2011, and within days of beginning of his training, his health began to deteriorate due to substantial and severe

mistreatment. Superiors hazed the Plaintiff to the point of incapacitation with demeaning tasks that included being ordered to conduct two unnecessary prostate exams his very first week at Dartmouth.

26. Another physician at Dartmouth was so concerned from what she heard of Isaacs' mistreatment, that she emailed the Program Director in July 2011 -- six months before Isaacs would become fully aware of what he had endured.

27. In early September 2011, Plaintiff met with Dr. Christine Finn to request a medical leave of absence. Plaintiff's leave was denied, and the Plaintiff was told by Dr. Finn that his performance was satisfactory.

28. On October 12, 2011, Dr. Isaacs completed an actigraph study; the results of this study were that Dr. Isaacs was unable to stay awake for more than 3 hours at work due to hazing and mistreatment.

29. The results of this actigraph study would later disappear under questionable circumstances.

30. Dr. Isaacs requested that the FBI investigate the destruction of this actigraph study, but no investigation ever occurred.

31. Destruction of patient records at a major Ivy League academic medical center, such as Dartmouth, is within the scope and jurisdiction of the FBI to investigate.

32. The FBI chose not to investigate, despite a field agent properly escalating the matter to his superiors.

33. The foul play by Dartmouth administrators against Dr. Isaacs came to a head during a January 13, 2012 meeting between Plaintiff, Dr. Christine Finn and residency co-chair

Dr. Ronald Green. During that meeting, the latter two attempted to coerce the Plaintiff to resign.

34. During that meeting, the two alleged that the Plaintiff had not disclosed important items on his application. They were referring to Dr. Isaacs' attendance at a medical school in Arizona and USC Keck School of Medicine. As such, a critical question developed as to how long Dartmouth knew about the sealed and undisclosed attendance. Dartmouth claimed to have discovered -- from undisclosed sources -- the sealed records in January 2012. Plaintiff alleges they obviously knew from his first week at work, hence explaining the unusual hazing, medical deterioration, and letters of concern written by Dartmouth staff.

35. Facing significant liability of having hazed a high-achieving physician to the point of incapacitation, it is alleged Dartmouth embarked on a massive evidence spoliation effort.

36. Various depositions reveal contradictory timelines from the key witnesses. Reflecting back to this meeting during a June 2012 New Hampshire unemployment hearing concerning Isaacs' termination, Dr. Finn testified that: "Although we had been more than willing to work with Jeff around performance issues, the issues of fraud and misrepresentation were those that we did not feel like we could tackle effectively in the training program, and the decision, you know, was made that he could not return." (See Exhibit A).

37. As such, Finn testified under oath that Isaacs' alleged performance issues did not warrant termination from residency -- that the termination was a result of Dr. Isaacs not disclosing his dismissal from USC on his ERAS form. (See Exhibit B).

38. This testimony directly conflicts with testimony Dr. Finn gave under oath, where she stated: "In terms of timing, I was not aware of the Arizona residency training until we sat down at the meeting in January, that week in January where we made the decision to place you on administrative leave. And I was not aware of the USC Medical School issue until sometime several weeks after that." (See Exhibit C).

39. These falsehoods under oath in multiple depositions were reported to the FBI by Dr. Isaacs. In short, Dartmouth backtracked on the USC issue multiple times under oath and refused to admit how and when they obtained the sealed 2006 USC records.

40. The FBI failed to investigate these falsehoods. In fact, no authority has investigated this matter.

41. There is justifiable concern that the administrators who conspired to ruin Plaintiff were able to subvert due process because of their status at the top of academic medicine and the Federal government.

42. Plaintiff's 2006 Federal claims of improper influence against NIH Director Robert Baughman (whose oversight of $50 million in NIH grant money appears to have resulted in his daughter's admission to Keck and subsequent favoritism against Isaacs) was settled by the sealing of Dr. Isaacs' USC records.

43. The records still ended up in the hands of Dartmouth.

44. Dartmouth's President, then President Nominee of the World Bank, seemingly ordered or assented to the aforementioned evidence destruction.

45. While the details spanning nearly a decade are complex, the simple truth is that Plaintiff was subject to retribution from a small circle of leaders in academic medicine and Federal government. These individuals passed along information about Plaintiff informally and

had their lawyers discredit Plaintiff through aggressive and illegal manipulation of Federal lawsuit evidence rules.

46. There is valid concern that the DOJ and FBI were simply unwilling or uninterested in a genuine investigation against the World Bank President, his colleagues at the NIH, Dartmouth, and otherwise.

47. Isaacs was vilified by a few leaders in academic medicine, including Baughman and Jim Yong Kim. However, with all emails deleted, this has become impossible to prove.

48. As a result, Isaacs has suffered and remains unable to practice medicine.

49. The Plaintiff, as soon as he became aware of the illegal situation during January 2012, informed Dartmouth that there would be a Federal lawsuit filed and that all evidence should be preserved. (See Exhibit D).

50. Plaintiff made this request through an email letter to College President Jim Yong Kim, notifying him of pending litigation in the United States District Court. The email specifically indicated that all evidence should be preserved.

51. The college had a duty under Federal Law to preserve relevant evidence and was noticed of this duty no later than January 15, 2012.

52. Despite that notice, the Plaintiff's computer and email accounts with Dartmouth Hitchcock Medical Center were disabled on January 17, 2011 and scheduled for deletion.

53. Isaacs noticed his account login was disabled and telephoned DHMC IT support on or around January 17, 2011.

54. IT support told Isaacs that his supervisors ordered the deletion of his electronic accounts.

55. IT support further informed Isaacs that automatic safety mechanisms were preventing the deletion for approximately another week.

56. Isaacs desperately emailed Finn, Jim Yong Kim, and others, pleading to reverse their order to destroy his electronic login and email access.

57. Finn was aware of Isaacs' litigation notice to Jim Yong Kim at the time she ordered deletion of Isaacs' electronic (eDH) files.

58. Finn had referenced the litigation and complaints to Jim Yong Kim in emails she sent to others in her department on or around January 17, 2011.

59. Finn and Jim Yong Kim purposefully and intentionally ignored Isaacs' pleas not to delete his eDH accounts.

60. Normally, an eDH account would only be deleted after an employee is properly terminated through due process including a fair hearing.

61. The willful destruction of Isaacs' eDH accounts constituted a felony under United States Code. 18 U.S.C 1519.

62. Dartmouth, via its attorneys, would later argue to the Court that automatic processes caused the destruction of Isaacs' eDH accounts.

63. Dartmouth knew that the felony code has exemptions for ESI deletions caused by automatic processes.

64. As stated, the only relevant automatic processes in this case were safety mechanisms to _prevent_ the deletion of the ESI.

65. No automatic process caused the deletion of Isaacs' eDH ESI.

66. Finn and Jim Yong Kim's decision to delete Isaacs' eDH files caused the deletion.

67. Dartmouth, via statements made by their attorneys, defrauded the Court by suggesting automatic processes were to blame.

68. The deletion of Dr. Isaacs' electronic accounts severely limited his ability to support his well-founded claims in the District Court and in administrative proceedings.

69. The deletion of evidence directly relevant to a civil matter in violation of Federal Criminal law was reported to the FBI.

70. The FBI failed to investigate these crimes.

71. The FBI knew, or should have known that these crimes had caused a miscarriage of justice in a Federal Court when they chose not to investigate them.

72. The American Association of Medical Colleges (AAMC) is the authority that manages the nationwide residency application process, ERAS (Electronic Residency Application Service). AAMC has an investigation unit for application problems, and it investigated Isaacs' application relating to the disclosure issue regarding his time at Keck. At the conclusion of its investigation, AAMC determined that the disciplinary records had been sealed and, therefore, that Dr. Isaacs did not need to disclose them on ERAS. (See Exhibit E). In January 2014, Finn testified under oath to accept the AAMC determination as a 'competent authority.' (See Exhibit F) Yet, Dr. Finn has never retracted the improper termination of Dr. Isaacs nor the reasons for it that are inconsistent with the AAMC determination.

73. Isaacs was never afforded a Fair Hearing, nor Probation, nor Administrative Leave. All three of these processes are described and required under hospital bylaws, Accreditation Counsel for Graduate Medical Education accreditation policies, and/or other Dartmouth Hitchcock Medical Center contracts.

74. Simply, the high ranking individuals described had wanton disregard for the law; they deleted electronic evidence, perjured testimony at deposition, bypassed Fair Hearings involving hospital staff, and improperly relayed sealed records.

Such repetitive and flagrant disregard for Federal law ought to have warranted FBI investigation, and likely, criminal prosecution.

## FBI INVOLVEMENT

75. Plaintiff brought all of these issues to the attention of the Fort Washington Resident Agency office, located at 501 Office Center Drive, Suite 200, Fort Washington, Pennsylvania.

76. Plaintiff explained the crimes that had been committed against him to a concerned agent at that office who indicated that he would relay the information to the Boston FBI office for further review and investigation.

77. Upon information and belief, the Boston FBI office received the documentation and arbitrarily failed to investigate Dr. Isaacs' claims.

78. Dr. Isaacs' reported crimes, notably Federal lawsuit evidence destruction at a major academic medical center, were neither petty nor minor, nor were they below the threshold of crimes the FBI would typically investigate.

79. The email destruction described, because it was intended to thwart a Federal lawsuit, is a Federal felony.

80. The lack of investigation of Federal lawsuit evidence destruction can and did cause the miscarriage of justice.

81. Given that probable cause exists for a Federal crime of a substantial level carried out at a major academic medical center, it is reasonable to seek review of the discretion of the

FBI not to pursue criminal charges against high ranking officials (Kim and Finn).

82. This failure to investigate was improper and caused Dr. Isaacs extensive damages including to his health and in preventing him from pursuing his medical career.

83. Plaintiff submitted a request for information that would offer insight into the deliberative process to explain why the Bureau declined to pursue an investigation into the crimes reported. If the Bureau did initiate an investigation unbeknownst to Dr. Issacs, what were the findings that led the Bureau to determine that no crimes had been committed?

84. According to the Bureau's website, only crimes that meet certain criteria will be investigated, and the Bureau reserves the right to investigate at its discretion. In Dr. Isaacs' initial complaint, all the asserted crimes reported fall under the jurisdiction of the Bureau. These crimes include serious allegations of retaliation, fraud, due process, defamation, and infliction of emotional and physical distress. Dr. Isaacs' complaint is testimonial evidence as to how he was treated by Dartmouth College and the injuries he suffers as a result. And, yet, the Bureau has simply dismissed the allegations, closing the case and offering a boilerplate explanation to its decision.

85. A simple investigation into how Dartmouth obtained the sealed records would, in all likelihood, prove the aforementioned crimes and, likewise, bring to a conclusions years of legal wrangling in multiple venues.

86. Because of the Bureau's failure to investigate the Plaintiff's claims, crimes that directly obstructed Dr. Isaacs' ability to seek justice in United States Courts, Dr. Isaacs has been prevented from receiving the justice he seeks. The effects of such behavior on the Justice system in America cannot be overstated. Deletion of evidence, perjury and obstruction of justice must be a priority of the Department of Justice. Without serious and consistent

punishments for these crimes, the system of American Justice cannot stand. The FBI's failures to investigate these crimes is not a matter of discretion -- these decisions cut to the very core of our Justice System.

## DR. ISAACS' FOIA REQUEST

87. Dr. Isaacs brings this action as a preliminary matter to remedy the failure of the Department of Justice to respond to his FOIA request and subsequent appeal. Once the Court orders that Dr. Isaacs is entitled to those documents and that information is received.

88. In its letter, dated January 22, 2018, the Bureau lists several exceptions to the FOIA under Title 5 §552 for its justification in closing Dr. Isaacs' request. (See Exhibit G) The Plaintiff properly indicates that these justifications are improper reasons for the Bureau's failure to respond. (See Exhibit H).

89. The very purpose of the FOIA is to give citizens the right to access information from the Federal government and was enacted with the intention to keep citizens informed as to government actions. The severity of the asserted crimes and lifelong effects of Dr. Isaacs' injuries warrant the Bureau to take a serious look into this matter. It doesn't make sense that the Bureau would dismiss a case such as this, where human and civil rights are at issue, even at its discretion. At the heart of his request, Dr. Isaacs is looking to understand the actions taken by the Bureau when first receiving his complaint and the Bureau's policies and procedures when determining whether or not to open an investigation of the reported crimes.

90. Dr. Isaacs acknowledges that the Bureau conducts investigations at its discretion; however, this discretion cannot be exercised arbitrarily. There must be policies and

procedure in place to guide the Bureau when making its determination as to whether a report of Federal crime warrants an investigation. This is the basis of the information Plaintiff seeks.

91. Given the questionable way that Dr. Isaacs' complaints were quashed upon their referral to the Boston FBI office, it is suspected that the parties responsible for stopping any investigation did so for discriminatory or improper reasons.

92. The exact reasons for the FBI's failure to investigate are impossible to determine because of the Bureau's failure to respond to the Plaintiff's FOIA request. It is expected that this section should be amended once additional information becomes available.

93. The FBI, by quashing the Plaintiff's request for an investigation and then failing to provide documentation, has effectively turned a blind eye to an individual whose medical career has been wrongfully destroyed.

## PLAINTIFF'S CLAIMS FOR RELIEF

### COUNT I
### WRONGFUL WITHHOLDING OF NON-EXEMPT RECORDS -- FOIA
UNITED STATES DEPARTMENT OF JUSTICE

94. Plaintiff repeats and re-alleges each and every allegation herein as if fully stated under this count.

95. Plaintiff properly requested records within the custody and control of the Federal Bureau of Investigation.

96. Defendant FBI wrongfully withheld agency records requested by Plaintiff by failing to comply with FOIA as outlined above.

97. Defendant FBI failed to bolster their response to this request when faced with the Plaintiff's appeal. Indicating only that the decision was under review.

98. Plaintiff, therefore, is entitled to injunctive and declaratory relief with respect to the immediate processing and disclosure of the requested records.

## COUNT II
## **PETITION FOR A WRIT OF MANDATE (Mandamus)**
UNITED STATES DEPARTMENT OF JUSTICE

99. Plaintiff repeats and realleges each and every allegation herein as if fully stated under this count.

100. The Plaintiff brings this action against the United States Department of Justice based on its status as a Federal government agency under 28 U.S. Code §1651.

101. 28 U.S.C. §1651 allows citizens to petition a judicial authority to order a government agency to correct its previous illegal behavior in order to comply with the law. In the case at hand, the Defendant is in violation of FOIA. The Plaintiff is requesting that the Defendant be ordered to stop said violations and be compelled to furnish the requested information.

102. Additionally, the Plaintiff seeks redress for the failure to investigate by the FBI. The evidence provided in this filing would indicate to any criminal investigator that a crime had likely been committed and needs to be investigated.

103. Although the Department of Justice has discretion regarding what crimes to investigate, the crimes reported herein have direct effects on the judicial branch's ability to dispense justice. The effects on Dr. Isaacs are directly related to claims he raised and was unable to fully present in the Federal Courts.

104. The actions of the Department of Justice were taken arbitrarily and without regard to the responsibility of the Department to investigate those claims of fraud or evidence destruction that would lead to injustice.

105. In accordance with a petition for a writ of mandamus, this action states the Defendant's name, date, citation and outlines his interest in the matter. Additionally, venue is proper pursuant to 28 U.S. Code §1361.

106. This action makes clear that the FBI and its agents are in violation of FOIA 5 U.S.C. §552, which requires the agency to release requested records to the public unless one or more specific exemptions apply. No relevant exception applies here. The Defendant failed to produce and provide the Plaintiff with requested information. The Defendant cited subsections (b)(6) and (b)(7)(C) as exceptions to the Defendant's request, but failed to offer the required explanation. Furthermore, this action outlines how the requested information does not fall within the definitions of subsections (b)(6) and (b)(7)(C).

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Order Defendant Federal Bureau of Investigation to immediately and fully process Plaintiff's FOIA request to the FBI and disclose all non-exempt documents to Plaintiff;

2. Issue a declaration that Plaintiff is entitled to immediate processing and disclosure of the requested records;

3. Order a mandamus commanding the Defendant to perform the required action under FOIA;

4. Order a mandamus requiring the Defendant to investigate Dr. Isaacs' claims;

5. Provide for expeditious proceedings in this action;

6. Retain jurisdiction of this action to ensure no agency records are wrongfully withheld;

7. Award Plaintiff costs and recoverable attorneys' fees in this action; and

8. Grant such relief as the Court may deem just and proper.

**JURY TRIAL REQUESTED ON ALL COUNTS SO TRIABLE**

Dated: May 4, 2018                        Respectfully Submitted
                                          Attorney for the Plaintiff


                                          /s/ John F. Skinner
                                          Atty. John F. Skinner, III
                                          BBO: 676768
                                          Associated Attorneys of New England
                                          587 Union Street
                                          Manchester, NH 03104
                                          Tel: 603-622-8100
                                          Fax: 888-912-1497
                                          AttorneySkinner@gmail.com