No. _____

===================================================

In The

# Supreme Court of the United States

———————◆———————

DR. JEFFREY ISAACS,

*Petitioner,*

v.

TRUSTEES OF DARTMOUTH COLLEGE, NH BOARD
OF MEDICINE, DARTMOUTH HITCHCOCK MEDICAL
CENTER, JEFFREY S. CAHILL and PENNY TAYLOR,

*Respondents.*

———————◆———————

**On Petition For Writ Of Certiorari
To The United States Court Of Appeals
For The First Circuit**

———————◆———————

**PETITION FOR WRIT OF CERTIORARI**

———————◆———————

KEITH A. MATHEWS, ESQ.
ASSOCIATED ATTORNEYS
   OF NEW ENGLAND
587 Union Street
Manchester, NH 03104
Ph. 603-622-8100
keith@aaone.law

===================================================

COCKLE LEGAL BRIEFS (800) 225-6964
WWW.COCKLELEGALBRIEFS.COM

i

## QUESTIONS PRESENTED

I.  Did the NH District Court abuse its discretion in dismissing a proper Rehabilitation Act retaliation claim, when it incorrectly claimed a "scoured" record did not contain any evidence of protected conduct under the Rehabilitation Act, when in fact no less than three instances of protected conduct existed?

II.  By turning a blind eye to the *Baylor* standard re deliberate indifference and failure to investigate Title IX violations, did the NH District Court hold Petitioner Isaacs to an incorrect standard when it required him to demonstrate as a prerequisite that the harassment occurred due to his sex, before holding Dartmouth accountable for not investigating an alleged assault?

III.  Did the NH Board of Medicine violate Section 1983, and Petitioner's Fourteenth Amendment due process rights, when it withheld key exonerating evidence from an evidentiary hearing that resulted in the nationwide publication of a false Board reprimand?

## Preliminary Introduction

This case concerns a fourteen-year legal dispute between Petitioner Jeffrey Isaacs, a top ranked medical school graduate, and various institutions and individuals who, thus far, have succeeded in delaying or permanently ending his dream of being a doctor.

In 2005, Petitioner was enrolled at University of Southern California's Keck School of Medicine. A fellow student who boasted of being admitted to USC

ii

**QUESTIONS PRESENTED** – Continued

through connections became involved in a dispute with Petitioner. In defending the aforementioned student, and the Keck Dean involved in her admission, Keck took unfair disciplinary action against Isaacs. Petitioner filed lawsuit in the California Central District Court, asserting various contract claims and a Rehabilitation Act claim; Petitioner had been undergoing treatment for a concussion at the time, which, apparently, he recovered from as he ultimately excelled during medical school. The dispute ended with an agreement sealing Petitioner's Keck records. Keck subsequently went through three consecutive medical school Deans, all either accused or found guilty of serious crimes.

Petitioner arrived at Respondent Dartmouth's medical residency program in 2011. After six months, Dartmouth terminated Isaacs for non-disclosure of the sealed Keck records. During these six months, Isaacs alleges he was hazed and abused, by a school that decided to hold his non-disclosure of Keck against him. He developed substantial new medical ailments as a result of this mistreatment. He was terminated without the fair hearing required by national accreditation rules.

In January 2012, Petitioner Isaacs again sought redress under the Rehabilitation Act retaliation in the New Hampshire District. Upon filing, he sent former Dartmouth and World Bank President Jim Yong Kim a Rule 26 Preservation Letter. Within a week or so,

iii

**QUESTIONS PRESENTED** – Continued

Dartmouth intentionally deleted all of Isaacs' emails and medical records. This prompted a motion for sanctions in the NH District Court against Dartmouth and Kim for evidence spoliation. Meanwhile, Isaacs was granted a subpoena in the Texas Western District Court for PACER records as he sought to prove Dartmouth was obstructing justice through evidence spoliation and perjury. The New Hampshire District denied sanctions and promptly granted an unopposed summary judgment to Dartmouth, while Isaacs had a pending motion requesting a hearing. The First Circuit denied a timely appeal. A Writ of Certiorari was petitioned to this Court. Certiorari was not granted.

Around the same time as the aforementioned Summary Judgment, the New Hampshire Board rescinded Petitioner's NH Medical License for not disclosing the sealed Keck records. The Board issued a false public order that "there was no provision sealing Isaacs' Keck records." Isaacs had discussed the sealed records on an exhaustive number of occasions with Board Investigator Cahill, and had sent him copies of the sealing provisions by email. Isaacs appealed the NH Board decision to the NH Supreme Court. There is no mandatory right of appeal in New Hampshire, and the NH Supreme Court declined to hear the appeal. Isaacs petitioned this Court for certiorari, which was denied.

Isaacs continues to apply to Dartmouth's federally funded residency program, and has been denied for eight straight years. He filed an action in the New

iv

**QUESTIONS PRESENTED** – Continued

Hampshire District in 2017, with claims that he is being permanently barred from their federal program in retaliation for his prior Rehabilitation Act claims. The District Court ruled that after "scouring" the record, there was no evidence of a prior Rehabilitation Act claim, and hence dismissed the claim. The District Court also dismissed a Section 1983 claim lodged against NH Board Investigator Cahill, which asserted he violated Isaacs' due process rights when he suppressed key evidence, namely, the USC settlements which sealed his Keck records. The District Court ruled that here there was no "clearly established right" for Cahill to provide due process, in this case, a reasonably fair investigation that presented crucial evidence. Lastly, the New Hampshire District denied a Title IX claim against Dartmouth, who failed to investigate an act forbidden under Title IX. The District Court, in contradiction to the *Baylor* decision and more recent case law regarding Title IX, required Plaintiff to first demonstrate he was targeted for his gender (i.e., being a male) as a prerequisite to moving forward with a claim of deliberate indifference, specifically, failure to investigate an assault.

The First Circuit denied the most recent appeal of the New Hampshire District Court's ruling. An ambiguous *de novo* review yielded to the "reasons given by the district court," but, without being specific, acknowledged it would not be "adopting all" of the District Court reasons. There remain three District Court cases still

v

**QUESTIONS PRESENTED** – Continued

pending; a case in the Massachusetts District concerning the Department of Education and related student loans, a separate case in Massachusetts District concerning the FBI's failure to investigate former World Bank Present Jim Yong Kim, and a RICO case in the California Central District against all current Respondents.

We respectfully petition the United States Supreme Court to address the following questions presented here for certiorari.

vi

## TABLE OF CONTENTS

Page

QUESTIONS PRESENTED ................................   i

Preliminary Introduction .................................   i

TABLE OF CONTENTS ......................................   vi

TABLE OF AUTHORITIES ................................   ix

OPINIONS BELOW ...........................................   1

RELEVANT PROCEDURAL HISTORY .............   1

JURISDICTIONAL STATEMENT ......................   4

CONSTITUTIONAL AND STATUTORY PROVI-
SIONS..............................................................   4

INTRODUCTION ..............................................   5

SUMMARY OF THE ARGUMENT ....................   9

ARGUMENT ......................................................   12

   I.   Standard Of Review ..................................   12

      1.   Did the NH District Court abuse its dis-
cretion in dismissing a proper Rehabili-
tation Act retaliation claim, when it
incorrectly claimed a "scoured" record
did not contain any evidence of pro-
tected conduct under the Rehabilitation
Act, when in fact no less than three in-
stances of protected conduct existed.....   13

vii

TABLE OF CONTENTS – Continued

Page

2. By turning a blind eye to the *Baylor* standard re deliberate indifference and failure to investigate Title IX violations, did the NH District Court hold Petitioner Isaacs to an incorrect standard when it required him to demonstrate as a prerequisite that the harassment occurred due to his sex, before holding Dartmouth accountable for not investigating an alleged assault?..................... 17

3. Did the Attorney Cahill and the NH Board of Medicine violate Section 1983, and Petitioner's Fourteenth Amendment due process rights, when it withheld key exonerating evidence from an evidentiary hearing that resulted in the nationwide publication of a false Board reprimand?........................................... 22

CONCLUSION.................................................. 27

APPENDIX

Judgment, United States Court of Appeals for the First Circuit (January 3, 2019) ................. App. 1

Judgment, United States District Court, District of New Hampshire (May 15, 2018).......... App. 3

Order, United States District Court, District of New Hampshire (May 15, 2018)..................... App. 4

Order, United States District Court, District of New Hampshire (February 5, 2018).............. App. 30

viii

TABLE OF CONTENTS – Continued

Page

Order, United States District Court, District of
   New Hampshire (October 24, 2017) .............. App. 71

Order, United States District Court, District of
   New Hampshire (July 12, 2017) .................. App. 110

Denial of Motion to Recall Mandate, United
   States Court of Appeals for the First Circuit
   (February 13, 2019) ..................................... App. 134

ix

## TABLE OF AUTHORITIES

Page

CASES

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)....................................................................12

*Brady v. Maryland*, 373 U.S. 83 (1963) ......................26

*Brown v. Hot, Sexy & Safer Prods.*, 68 F.3d 525 (1st Cir. 1995) .........................................................18

*Carrero-Ojeda v. Autoridad De Energia Electrica*, 755 F.3d 711 (1st Cir. 2014)....................12, 13

*Colon-Fontanez v. Mun'y of San Juan*, 660 F.3d 17 (1st Cir. 2011) ....................................................16

*D.B. v. Esposito*, 675 F.3d 26 (1st Cir. 2012)..............14

*Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999)...........................21

*Estate of Lance v. Lewisville Sch. Dist.*, 743 F.3d 982 (5th Cir. 2014)....................................................21

*Foster v. Ball*, 78 Fed. App'x 263 (9th Cir. 2003)........22

*Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52 (1st Cir. 2002) .........................................................18

*Gebster v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) .....................................................18, 20

*Gigilo v. United States*, 405 U.S. 150 (1972) ..............26

*Grassick v. Holder*, 2012 U.S. Dist. LEXIS 60648 (D.R.I. May 1, 2012) ...............................................16

*Haines v. Kerner*, 404 U.S. 519 (1972).......................15

*Hernandez v. Baylor*, 274 F. Supp. 3d 602 (W.D. Tex. 2017) ........................................ 10, 11, 17, 20, 21

x

TABLE OF AUTHORITIES – Continued

Page

*Kyles v. Whitley*, 514 U.S. 419 (1963)..........................26

*McKenney v. Mangino*, 873 F.3d 75 (1st Cir. 2017), cert. denied, No. 17-1147, 2018 WL 928274 (Mar. 19, 2018)...........................24

*Morgan v. Town of Lexington*, 823 F.3d 737 (1st Cir. 2016) ....................................................18

*Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1 (1st Cir. 2011). ...................................12, 13

*Platten v. HG Berm. Exempted Ltd.*, 437 F.3d 118 (1st Cir. 2006) ....................................12

*Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49 (1st Cir. 2013) ....................................12

CONSTITUTIONAL PROVISIONS

U.S. Const. amend. V .................................................1

U.S. Const. amend. XIV .....................................9, 11, 12

STATUTES

20 U.S.C. § 1681 ..........................................................3

28 U.S.C. § 2101(c) ....................................................4

28 U.S.C. § 2104 .........................................................4

29 U.S.C. § 701 ............................................................4

42 U.S.C. § 1983 .................................................*passim*

42 U.S.C. § 1985(3)....................................................1

xi

TABLE OF AUTHORITIES – Continued

Page

Section 504 of the Rehabilitation Act of 1973, 29
   U.S.C. § 794.....................................................*passim*

Title IX of the Higher Education Amendments
   of 1972, 20 U.S.C. § 1681(a) ...........................*passim*

RULES

Fed. R. Civ. P. 12(b)(6)..............................................1, 12

Fed. R. Civ. P. 60.........................................................3

1

## OPINIONS BELOW

The opinion of the Court of Appeals was entered on January 3, 2019 is unreported and is found at Appendix. App. 1 The Order of the United States District Court for the District of New Hampshire denying Petitioner's motion to amend was entered on May 15, 2018 and is found at Appendix. App. 2

———————◆———————

## RELEVANT PROCEDURAL HISTORY

Dr. Isaacs filed a Complaint and Demand for Jury Trial in the United States District Court for the District of New Hampshire on February 3, 2017, naming Respondents as Defendants. This Complaint asserted claims based upon and against: 42 U.S.C. §§ 1983 and 1985(3) violations against all Respondents; Fifth Amendment Due Process violations against all Respondents; Title IX of the Higher Education Amendments of 1972, 20 U.S.C. § 1681(a), violations and retaliation against the two Dartmouth Respondents; violations of and retaliation regarding the Americans with Disabilities Act against Respondent New Hampshire Board of Medicine (the "Board"); and Injunctive Relief against all Respondents. Respondents filed motions to dismiss pursuant to Rule 12(b)(6), and Dr. Isaacs filed related Objections. On July 6, 2017, Dr. Isaacs filed his First Amended Complaint and Demand for Jury Trial ("FAC"). The FAC added Jeffrey Cahill, an attorney who served as an investigator and prosecutor for the Board, and Penny Taylor, the signatory, Administrator, and Authorized Representative for the

2

Board, as individual defendants. The FAC asserted several of the same claims against the institutional defendants and new claims against Attorney Cahill and the individual Board members.

The lower court entered an Order dated July 12, 2017, that dismissed certain claims asserted in Dr. Isaacs' original complaint in response to DHMC's motion to dismiss and dismissed other of Dr. Isaacs' claims *sua sponte*. District Court Order of July 12, 2017, at 25. The District Court also asked Dr. Isaacs to make a show cause filing regarding claim exhaustion issues. *Id.* The District Court issued another Order on October 24, 2017, which also dismissed certain claims based on motions to dismiss and ordered Dr. Isaacs to show cause why one claim was not time barred.

Dr. Isaacs subsequently filed a Second Amended Complaint ("SAC") on November 17, 2017. The SAC asserted, relevant to this appeal, claims for Title IX violations and for retaliation relating to Section 504 of the Rehabilitation Act of 1973. Respondents each objected to the filing of the SAC.

On February 5, 2018, the District Court issued another Order addressing, in part, Dr. Isaacs' motion for leave to amend with the SAC. This Order addressed the issues that are raised in this appeal. The lower court held that Dr. Isaacs' Title IX claim, asserted in the SAC, was futile and dismissed it. District Court Order of February 5, 2018. App. 4 This claim asserted Title IX violations based on Dartmouth's failure to investigate his Title IX complaint. The court held that Dr. Isaacs had failed to allege that his supervisor's conduct towards him constituted harassment based

3

on the basis of sex, as that terminology is used in 20 U.S.C. § 1681(a). App. 53 Therefore, according to the District Court, any failure to investigate was not actionable. The District Court also improperly held that Dr. Isaacs' claim for retaliation connected to Section 504 of the Rehabilitation Act of 1973 was also futile. App. 11 The lower court based its holding on a purported failure of Dr. Isaacs to allege a Rehabilitation Act claim. *Id.* Therefore, according to the lower court, Dr. Isaacs failed to allege protected conduct, an element of a retaliation claim. *Id.* For this primary reason, the lower court held that this claim was futile and was dismissed. The problem with the dismissal is that it was entirely well known throughout Dartmouth, if not the medical residency community generally, that Isaacs has raised and filed multiple related Rehabilitation Act claims since 2006.

The District Court issued one additional Order, on May 15, 2018. This Order addressed Dr. Isaacs' Rule 60 motion and his show cause briefing on his 42 U.S.C. § 1983 claim. The Court denied the Rule 60 motion and held that the show cause briefing did not save Dr. Isaacs' Section 1983 claim. The Court subsequently issued its judgment in favor of Respondents.

The United States Court of Appeals for the First Circuit issued a short order on January 3, 2019 stating, in part: "For largely the reasons given by the district court, without adopting all of the several reasons given in its orders dated July 12, 2017, October 24, 2017, February 5, 2018 and May 15, 2018, the judgment of the district court is affirmed." App. 1

————◆————

4

## JURISDICTIONAL STATEMENT

On January 3, 2019 the United States Court of Appeals for the First Circuit entered Judgment. This Petition is timely filed on April 3, 2019. The Supreme Court of the United States has jurisdiction under 28 U.S.C. § 2101(c) and 28 U.S.C. § 2104 to review this Petition.

————◆————

## CONSTITUTIONAL AND STATUTORY PROVISIONS

29 U.S.C. § 701

Section 794. Nondiscrimination under Federal grants and programs; promulgation of rules and regulations

(a)   Promulgation of rules and regulations

No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

20 U.S.C. § 1681

(a)   Prohibition against discrimination; exceptions No person in the United States

5

shall, on the basis of sex, be excluded from
participation in, be denied the benefits of, or
be subjected to discrimination under any edu-
cation program or activity receiving Federal
financial assistance. . . .

42 U.S.C. § 1983. Civil action for deprivation of rights

Every person who, under color of any
statute, ordinance, regulation, custom, or us-
age, of any State or Territory or the District of
Columbia, subjects, or causes to be subjected,
any citizen of the United States or other per-
son within the jurisdiction thereof to the
deprivation of any rights, privileges, or im-
munities secured by the Constitution and
laws, shall be liable to the party injured in an
action at law, suit in equity, or other proper
proceeding for redress, except that in any ac-
tion brought against a judicial officer for an
act or omission taken in such officer's judicial
capacity, injunctive relief shall not be granted
unless a declaratory decree was violated or
declaratory relief was unavailable. For the
purposes of this section, any Act of Congress
applicable exclusively to the District of Co-
lumbia shall be considered to be a statute of
the District of Columbia.

———————◆———————

**INTRODUCTION**

This Petition marks the third occasion Petitioner
has been compelled to seek Supreme Court interven-
tion in his decades-long legal battle to be a doctor. The

6

first time, summary judgment had been entered against him when Dartmouth and, until recently, head of the World Bank Dr. Jim Yong Kim deleted key electronic evidence, essentially leaving him with a lack of prosecutorial evidence after the district judge decided against any sanctions. Certiorari was not accepted on that occasion. The second occasion occurred when the New Hampshire Board revoked his medical training license, falsely accusing him of withholding USC records, when, in fact, the Board withheld USC settlement records from evidence. The New Hampshire Supreme Court did not take the case under consideration, so essentially, the Board of Medicine was left unchecked until Petitioner filed the present Section 1983 charge.

Dr. Isaacs has spent the last fourteen years of his life working towards his honorable goal of practicing medicine. He has been met with a litany of obstructions, starting when he was dismissed from an educational program at USC in their attempt to defend a medical student's pay-for-play admissions and favoritism. Despite diligently making his way through medical school in the face of adversity, upon graduation his woes only worsened. His medical residency was terminated, after six months of unconscionable mistreatment, for non-disclosure of sealed records. He was denied institutional due process, in the form of probation and/or fair hearing tribunals.

Throughout this, Petitioner has implored those with the ability to remedy his circumstances to aid him, he has gone to the courts, he has requested an investigation from the Department of Justice, and the

7

Department of Education, and each time those entities have failed to take action.

The legal system, and to be sure, the medical training system, did no favors to Dr. Isaacs for fourteen years. He is unfairly and permanently restricted from pursuing his chosen profession and despite his efforts his most recent petition was dismissed at the pleading stage.

This matter originates with a dispute dating back to 2005, with Robert Baughman, a former NIH director, Harvard professor, and member of the White House Committee on Counterterrorism. Baughman had overseen a substantial $40 million grant to the Keck School of Medicine, where his daughter was subsequently accepted with Dr. Isaacs in the MD Class of 2009. With the exception of the events described herein, Isaacs had an impeccable record that put him on a path where he would contribute substantially to our nation's health care system. A dispute arose between Isaacs and Baughman, and USC was alleged to have favored the NIH donor's daughter, who openly boasted of "connections that got her into USC" and "connections that would get her into residency" (indeed, she is now on Harvard Medical School faculty), when they disciplined Dr. Isaacs. Isaacs brought suit, alleging he was scapegoated as USC defended its own impropriety and favoritism stemming from Dr. Baughman's position and contributions. After much litigation, an agreement was reached between Dr. Isaacs and USC Keck. The agreement sealed all disciplinary records, dismissed all administrative charges, and cancelled all contracts

8

between the parties. Years went by; Isaacs excelled without further incident at international medical school with training in London, Singapore, and New York and Florida, and achieved a top national board score higher than the average neurosurgeon.

His very achievement and persistence, apparently, fueled an organized secondary retaliation against him. With his newly achieved medical diploma, Dr. Isaacs began residency training at Dartmouth. For unknown reasons, and unknown to Dr. Isaacs, Dartmouth started to hold the Keck incident against him. He was treated unethically and suffered extraordinary stress. Dartmouth terminated Isaacs without any formal probationary period and without the normal peer review hearing process, both of which are required by hospital bylaws.

Ultimately, the New Hampshire Board of Medicine revoked Dr. Isaacs' medical license for not disclosing the sealed discharged records from Keck. This ruling was issued after a hearing where Dr. Isaacs was not in attendance and based on a review of a record created by Respondent Cahill that did not include the settlement agreement that sealed the disciplinary records, the most important piece of evidence that would have cleared Dr. Isaacs for the malfeasance alleged. As a result of the New Hampshire Board of Medicine's incorrect order being published, Dr. Isaacs has been permanently barred from medicine over a highly technical, and most importantly, false allegation concerning expunged records.

9

Isaacs, nonetheless, eagerly reapplies each year to Dartmouth's federally funded training program. Dartmouth's attorneys have made clear his reapplications are not welcome. They seldom even dignify an acknowledgement of application. Dartmouth knows that they have succeeded thus far (at least, until Jim Yong Kim resigned from the World Bank) in subverting due process, and that their attempt to ban Isaacs from his deserved place as a doctor is working.

The present case before the New Hampshire District Court was dismissed at the pleading stage improperly and then his appeal was denied in a two paragraph order that did not indicate on what grounds the case is not allowed to proceed. Dr. Isaacs brings for this Court's consideration, three separate ways the United States District Court for the District of New Hampshire and then the United States Court of Appeals for the First Circuit failed in their analysis. Specifically, the courts below allowed the Respondents to evade critical legislation to prevent educational abuses, namely: 1) Title IX, 2) the Rehabilitation Act and 3) Section 1983 as it applies to the Due Process Clause of the Fourteenth Amendment.

——————◆——————

## SUMMARY OF THE ARGUMENT

The District Court's dismissal and the Court of Appeals' upholding the dismissal of Dr. Isaacs' claim for retaliation based upon Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 was incorrect. That

10

holding falsely purported the absence of a claim by Dr. Isaacs under the Rehabilitation Act. According to the district court, without such a claim, Dr. Isaacs' failure to allege protected conduct was fatal to its claim. Yet, as acknowledged by DHMC in a filing in the lower court matter, Dr. Isaacs made a claim based on the Rehabilitation Act in the case that he filed in 2012. He also filed the original Rehabilitation Act claim against USC in 2005, and has filed multiple complaints with the Department of Education under the authority of the Rehabilitation Act. To say Respondents were not aware of Isaacs' Rehabilitation Act claims borders on the ridiculous. Accordingly, protected conduct occurred, and the retaliation claim should have proceeded.

The District Court and the Court of Appeals also erred in holding that Dr. Isaacs had failed to allege a plausible claim under Title IX of the Higher Education Act Amendments of 1972, 20 U.S.C. § 1681(a). The lower court reasoned that Dr. Isaacs had not alleged circumstances fitting the statutory scheme in that no harassment based on Dr. Isaacs' sex occurred. The lower court was incorrect, as Dr. Isaacs alleged that the indecent examinations he performed at the instruction of his supervisor subjected him to harassment based upon his sex and were connected to the unfounded stalking allegations against him. He suffered severe health problems almost immediately after performing the unnecessary procedures. Dr. Isaacs stated a claim in the SAC for a Title IX violation. Moreover, under the *Hernandez v. Baylor*, 274 F. Supp. 3d 602 (W.D. Tex. 2017) standard, the lack of investigation itself clearly should have invoked Title IX. This is not the first time

11

the New Hampshire District conveniently turned a blind eye to black letter law. Counsel did provide an explanation to the District Judge's request that he show, as a prerequisite, gender based discrimination. However, *Baylor* is clear that deliberate indifference to a sexual assault itself represents an actionable Title IX violation.

The District Court also erred in the dismissal of Dr. Isaacs' claim that he was denied his right to due process of law when critical exonerating evidence was withheld by the NH Board of Medicine. The District Court erroneously misconstrued the issue, namely evidence destruction, when it sent Petitioner and his counsel on a "show cause" rabbit hole order asking them to locate a "clearly defined right" for Isaacs to have had the evidence entered into the record. In other words, rather than force the New Hampshire board to defend a Section 1983 and Fourteenth Amendment due process violation, the District Court shifted the burden to the Petitioner to find a defined law requiring a Board of Medicine investigator to act in a fair and reasonable matter with evidence. Hence the District Court failed to apply the proper legal standard to determine whether the actions of Respondent Cahill violated a "clearly established" constitutional right. It is clear that under the law the presentation of exculpatory evidence by those in a prosecutorial or investigative role is a clearly established part of the constitutional right to due process and therefore Dr. Isaacs' Section 1983 claim should have been allowed to proceed.

———————◆———————

12

# ARGUMENT

## I.   Standard Of Review

Courts generally apply Rule 12(b)(6) standards to claims of futility relating to a proposed amended complaint. *See Platten v. HG Berm. Exempted Ltd.*, 437 F.3d 118, 132 (1st Cir. 2006). Orders granting motions to dismiss under Rule 12(b)(6) are reviewed *de novo* and the same standard and criteria as the district court is applied. *Carrero-Ojeda v. Autoridad De Energia Electrica*, 755 F.3d 711, 717 (1st Cir. 2014). The "sole inquiry" in this review "is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiff[ ], the complaint states a claim for which relief can be granted." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 7 (1st Cir. 2011). To survive a motion to dismiss, the complaint must "state a claim for relief that is plausible on its face." *Carrero-Ojeda*, 755 F.3d at 717 (quoting *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013)).

A two-pronged approach in reviewing a district court holding on a motion to dismiss is taken. First, the Court identifies and disregards complaint statements that, notwithstanding being labeled as facts, represent legal conclusions, or "[t]hreadbare recitals of the elements of a cause of action." *Ocasio-Hernandez*, 640 F.3d at 12 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Next, the Court takes the facts of the complaint as true, drawing all reasonable inferences in the plaintiff's favor, and determines whether

13

there is a plausible claim for relief. *Carrero-Ojeda*, 755 F.3d at 717. Significantly, a court is not to "attempt to forecast a plaintiff's likelihood of success on the merits; 'a well-pleaded complaint may proceed even if . . . a recovery is very remote and unlikely.'" *Ocasio-Hernandez*, 640 F.3d at 12-13 (quoting *Twombly*, 550 U.S. at 556).

> **1.  Did the NH District Court abuse its discretion in dismissing a proper Rehabilitation Act retaliation claim, when it incorrectly claimed a "scoured" record did not contain any evidence of protected conduct under the Rehabilitation Act, when in fact no less than three instances of protected conduct existed?**

In the District Court's Order of February 5, 2018, the Court improperly held that Dr. Isaacs' Rehabilitation Act retaliation claim, which Dr. Isaacs asserted, *pro se*, in his SAC, was futile and warranted dismissal. The Court dismissed this claim based upon a finding that Dr. Isaacs had not alleged protected conduct by asserting a Rehabilitation Act claim, as is required for a retaliation claim. Dr. Isaacs, however, asserted a Rehabilitation Act claim in 2013 in the course of previous litigation involving, among other Dartmouth parties, Respondent DHMC, and DHMC acknowledged in a filing made below that Dr. Isaacs had asserted a Rehabilitation Act claim in his prior case. Based on the existence of this protected conduct and DMHC's and, derivatively, Dartmouth's knowledge of it, Dr. Isaacs'

14

Rehabilitation Act retaliation claim should have been allowed to proceed.

Section 504 of the Rehabilitation Act protects individuals with disabilities from participation exclusion, benefits denial, or discrimination in any program or activity receiving federal financial assistance. 29 U.S.C. § 794. The Dartmouth Respondents indisputably receive substantial federal financial assistance; accordingly, they are subject to this portion of the Rehabilitation Act.

An individual may assert a claim for retaliation based on the Rehabilitation Act. In order to prevail on such a claim, "a plaintiff must show that (1) he or she engaged in protected conduct, (2) he or she was subjected to an adverse action by the defendant, and (3) there was a causal connection between the protected conduct and the adverse action." *D.B. v. Esposito*, 675 F.3d 26, 41 (1st Cir. 2012).

Applying this standard, the district court found that Dr. Isaacs' SAC had failed to allege that he had engaged in protected conduct and held that amendment based on this claim in the SAC would be futile. District Court's Feb. 5, 2018, Order at 42. Having "scoured the record," the Court could not find a proper Rehabilitation Act claim. *Id.* at 39. Yet earlier in the litigation, DHMC acknowledged in motion papers that Dr. Isaacs had made a Rehabilitation Act claim in the previous litigation in the same District Court. In its Memorandum of Law in Support of its Motion to Dismiss the original complaint in this matter, DHMC

15

listed the claims made in Dr. Isaacs' amended com-
plaint in Docket No. 1:12-cv-00040-LM (D.N.H.), in-
cluding, as Count 7, a violation of Section 504 of the
Rehabilitation Act. Additionally the very OCR letter
that evidenced Dr. Isaacs' claims under the Rehabilita-
tion Act had been filed in the case as part of a notice of
related claim. In scouring the record, the District Court
would have had to find a claim under the Rehabilita-
tion Act and the Dartmouth Respondents would have
to have ignored all of the prior litigation in this case,
some of which was defended by the very counsel who
appeared on this case. By willfully ignoring the undis-
putable fact that Dr. Isaacs had previously made a Re-
habilitation Act claim the District Court improperly
denied Dr. Isaacs' fundamental retaliation claim – that
he is being improperly barred for life from the medical
profession in retaliation for his multiple Rehabilitation
Act claims against USC and Dartmouth.

Significantly, Dr. Isaacs filed his SAC acting *pro se*,
during a brief period where his attorney representa-
tion was under transition. The Supreme Court held
long ago that complaints filed *pro se* are to be con-
strued liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21
(1972). Further, although not specifically referenced in
the SAC, the lower court record contained a reference
to Dr. Isaacs' 2013 Rehabilitation Act claim. Dr. Isaacs
filed the SAC knowing what had been in the record,
including that he had filed a Rehabilitation Act claim
in the previous litigation.

16

The District Court also found that Dr. Isaacs could not meet the causal connection element of a Retaliation claim because the Dartmouth respondents were not aware of Dr. Isaacs' making a Rehabilitation Act claim. The record reference to this 2013 claim addresses that purported deficiency without ambiguity.

To the extent Respondents argue that a causal connection remains inadequately alleged, the timing of the claim and DHMC's first denial of Dr. Isaacs' residency application sufficiently fulfills the causal element at the complaint stage. To survive a motion to dismiss, the chronology of the key events can "suffice to establish causation for the purposes of stating a plausible claim for relief." *Grassick v. Holder*, 2012 U.S. Dist. LEXIS 60648, *21 (D.R.I. May 1, 2012) (citing *Colon-Fontanez v. Mun'y of San Juan*, 660 F.3d 17, 37 (1st Cir. 2011)). Dr. Isaacs engaged in protected conduct by asserting the Rehabilitation Act claim in February 2013, and 2013 was the first year that the DHMC rejected his residency application without so much as an interview. This chronological sequence is sufficient to state a "plausible" claim.

The Court further ordered that this claim be dismissed with prejudice, despite the fact that the Petitioner continues to apply for residency each year. This restriction on continued filing despite individual incidents of retaliation occurring each year is wholly unlawful and requires that the decision of the lower court be overturned. Given the causal connection alleged above, each denial of his application without proper

17

consideration forms a separate and distinct actionable incident of retaliation.

## 2. By turning a blind eye to the *Baylor* standard re deliberate indifference and failure to investigate Title IX violations, did the NH District Court hold Petitioner Isaacs to an incorrect standard when it required him to demonstrate as a prerequisite that the harassment occurred due to his sex, before holding Dartmouth accountable for not investigating an alleged assault?

Also in its February 5, 2018, Order, the District Court held that amending Dr. Isaacs' action with his allegation that the Dartmouth Respondents violated Title IX, 20 U.S.C. § 1681(a), would have been futile and dismissed this claim. The Court reasoned that Dr. Isaacs had not alleged that, in failing to investigate Dr. Isaacs' complaint relating being forced to perform certain procedures, the Dartmouth Respondents violated Title IX because Dr. Isaacs did not allege that he had been sexually harassed. The District Court was incorrect, as the SAC adequately pleads a Title IX violation by the Dartmouth Respondents for failing to investigate the sexual harassment that Dr. Isaacs suffered at the hands of his DHMC supervisors.

Title IX prohibits any educational institution benefiting from federal financial assistance from excluding from participation, denying benefits, or subjecting to discrimination any individual based upon sex.

18

20 U.S.C. § 1681(a). A private claim under this statutory provision is only available against the educational institution relating to which the violative conduct occurred. *Morgan v. Town of Lexington*, 823 F.3d 737, 745 (1st Cir. 2016) (quoting *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 65 (1st Cir. 2002)).

A Title IX claim requires allegations that: (1) the plaintiff was a student or member of a protected class; (2) that he/she was subject to sexual harassment; (3) that this harassment was based on sex; (4) that the harassment was such that it altered the circumstances of his/her education and created a hostile environment; and (5) that a basis for liability of the educational institution exists. *Brown v. Hot, Sexy & Safer Prods.*, 68 F.3d 525, 540 (1st Cir. 1995); *see also Frazier*, 276 F.3d at 66. In order to demonstrate a claim based on a failure to investigate, as Dr. Isaacs did below, a plaintiff must show that an educational institution official "who at a minimum has the authority to institute corrective measures . . . has actual notice of, and is deliberately indifferent to, the [educational institution employee's] misconduct." *Gebser v. Lago Vista Indep. School Dist.*, 524 U.S. 274, 277 (1998).

Contrary to the District Court's holding, Dr. Isaacs asserted such a claim. During the second day of his residency at DHMC, Dr. Isaacs' supervisor instructed him to perform prostate examinations on two separate patients. Such examinations involve, among other things, genital manipulation, and Dr. Isaacs performed the examinations as instructed. He later learned that

19

neither one was necessary. Particularly given the knowledge of at least some individuals at Dartmouth of the unfounded stalking allegations against Dr. Isaacs, one can infer that Dr. Isaacs' supervisor ordered him to perform unnecessary, indecent examinations to humiliate him for having arrived at the DHMC program with an undisclosed history of stalking.

In such circumstances, the direction to perform the unnecessary genital examinations constituted harassment, of a sexual nature, that isolated Dr. Isaacs. Any argument that the examinations were of a medical nature and therefore outside of the scope of a Title IX claim is misplaced – no medical indication existed for them. Dr. Isaacs understood this direction to be based upon the existence of the unfounded stalking allegations, that were in turn based on his sex. This allegation brings these circumstances within the ambit of Title IX. Dr. Isaacs' reaction to these unnecessary examinations shows that they "altered the circumstances" of his education. Shortly after performing the required prostate examinations, Dr. Isaacs suffered from certain medical symptoms for the first time. These symptoms included heart palpitations and related issues, sleep disturbances, including nightmares, and an inability to stay awake for extended periods of time, as he did previously. Other Dartmouth physicians expressed concern about Dr. Isaacs' well-being during the time period surrounding the examinations. Dr. Isaacs' afflictions show just how severe his supervisor's sexual humiliation of Dr. Isaacs was.

20

It certainly changed the conditions of Dr. Isaacs' educational program.

Finally, Dr. Isaacs submitted a letter describing the Title IX violations to the President of Dartmouth on April 20, 2014. In this letter, Dr. Isaacs described the sexual abuse that he underwent. *Id.* Dr. Isaacs never received any response to this letter, nor did Dartmouth launch an investigation. This lack of investigation in the face of knowledge of a Title IX problem means that DHMC can be liable to Dr. Isaacs, and these allegations constitute a plausible claim that Dartmouth was "deliberately indifferent" to the conduct of Dr. Isaacs' supervisor.

Applying Title IX, this Court explained that an institution can be liable for a Title IX violation when it is aware of sexual harassment occurring within its control and does nothing. *Gebster v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). Since this Court's decision in *Gebster* the social political landscape has shifted further towards the plausibility of Dr. Isaacs Title IX claim. The Western District of Texas' recent ruling In *Hernandez v. Baylor*, 274 F. Supp. 3d 602 (W.D. Texas 2017) is especially illustrative. The Western District court in that case addressed a Title IX claim made by a victim of a sexual assault and held that the claim was plausibly alleged, although ultimately dismissing the claim based on the statute of limitations. In its analysis, the court relied on a recent case from the U.S. Court of Appeals for the Fifth Circuit, in which the appellate court explained that a school can be liable for a Title IX violation when the

21

school is "deliberately indifferent" to harassment of
which it is aware, and the harassment is so severe that
it deprives victims of educational benefits and oppor-
tunities. *Id.* at 613 (quoting *Estate of Lance v. Lewis-
ville Sch. Dist.*, 743 F.3d 982, 985 (5th Cir. 2014) and
*Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of
Educ.*, 526 U.S. 629, 650 (1999)).

Applying these principles, the court held that Ms.
Hernandez alleged a plausible Title IX claim. The court
reasoned Ms. Hernandez alleged that she was sex-
ually assaulted by another student at Baylor, that she
reported the assault to school authorities that Baylor
did nothing or almost nothing in response, and that
she suffered concrete consequences to her education
pursuits as a result. In his SAC, Dr. Isaacs similarly
alleged that he suffered a sexual assault, that he re-
ported this assault to the President of Dartmouth, that
Dartmouth did nothing in response, and that he suf-
fered physical consequences that interfered with his
education and employment pursuits in his residency.

The District Court was incorrect to find that Dr.
Isaacs had to allege that he suffered discrimination
due to his gender, this is an illogical application of the
statute. The argument assumes, without bases that ed-
ucational institutions are only required to investigate
sexual assaults that are occurring with discriminatory
intent. Obviously this is not the intent of the statute,
nor how it has been applied by the courts. Title IX
applies to the circumstances alleged in Dr. Isaacs' com-
plaint and the lower Courts blatantly failed to apply

22

the statute correctly in dismissing Dr. Isaacs' com-
plaint.

3. **Did the Attorney Cahill and the NH
   Board of Medicine violate Section 1983,
   and Petitioner's Fourteenth Amend-
   ment due process rights, when it with-
   held key exonerating evidence from an
   evidentiary hearing that resulted in
   the nationwide publication of a false
   Board reprimand?**

Petitioner brought a claim under Section 1983
against the New Hampshire Board investigator Attor-
ney Cahill, asserting he violated Dr. Isaacs' due process
rights by withholding critical exonerating evidence. It
was undisputed that in September 2014, Petitioner
Isaacs forwarded Respondent Cahill the First Settle-
ment Agreement, which sealed his records at USC. At
the time, Cahill was acting in official investigative ca-
pacity for the NH Board of Medicine.

The Board issued an order not only withholding
the evidence, but denying its existence: "There is no
provision sealing the record." At the court below, the
Respondent's acknowledged the falsity of the Board
Order, and did not deny Cahill had been in receipt of
said order but never presented it to the Board. Re-
spondents' sole defense was the absurd argument that
Petitioner Isaacs had no "clearly defined right" under
1983 to due process. The Respondents cited *Foster v.
Ball*, 78 Fed. App'x 263 (9th Cir. 2003), and its under-
lying trial court decision and asserts that because Dr.

23

Isaacs has not alleged a "clearly established right," his claim is futile. The main difference here is that Attorney Cahill was acting in an investigative context and that the evidence in question was the settlement agreement which sealed Dr. Isaacs' educational records, central to the issue of Isaacs' disclosure of his USC student records. The District Court erroneously went along with this argument, subverting Section 1983 to require the Petitioner at the pleading stage to present evidence of a well defined "clearly established right." App. 2 The Court's order narrowed the Petitioners' claim to a right to have exculpatory evidence produced at an administrative hearing, allowing the issuance of an order which erroneously states that due process is not a clearly established right.

A constitutional error of such magnitude should have been immediately obvious upon *de novo* review at the First Circuit, but, once again the appellate circuit failed petitioner and failed to perform a comprehensive *de novo* review (made more obvious by the two paragraph order issued app.) In criminal Section 1983 case law, it is clear when an investigator intentionally discards critical evidence to achieve an improper conviction, Section 1983 has been violated. Here, a different – erroneous and illogical – standard has been applied.

The Board convened during a snowstorm, denying Isaacs' emergency request for a postponement. Moreover, the Board denied an ADA request for Isaacs to be present via videoconference. The District Court improperly dismissed ADA claims against the Board for these actions. In any case, Isaacs had presented the

24

exonerating evidence months before the hearing, and even assuming the District Court was correct in allowing the snowstorm and videoconference requests to be exempt from ADA challenge, there can be no serious claim that the Board's actions withhold scrutiny at the summary judgment level as to the 1983 claim. Collectively, the Board's adverse actions against Isaacs, on multiple occasions, should have progressed to a jury. The SAC paints a picture of an overly aggressive prosecutor who: 1) verbally admitted to Isaacs he was under pressure "from above" to appease Dartmouth, 2) failed to investigate Title IX claims, 3) destroyed key evidence, 4) denied reasonable requests for hearing accommodations for snow and medical issues, and 5) improperly blamed Isaacs for USC's non compliance with the settlement. Had such an individual been subject to Section 1983 in a criminal proceeding, clearly dismissal would be inappropriate.

The District Court's argument that Dr. Isaacs' right to due process was not violated by the actions of Attorney Cahill is a manipulation of logic that is completely inappropriate at the pleading stage of the case. The Court turns to the doctrine of Qualified Immunity citing that "Qualified immunity is a doctrine that shelters government officials from civil damages liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *McKenney v. Mangino*, 873 F.3d 75, 80 (1st Cir. 2017), cert. denied, No. 17-1147, 2018 WL 928274 (Mar. 19, 2018) (quoting *Harlow*, 457 U.S. at 818). The District Court's review of

25

this issue focuses on the Petitioner's claim that his right to substantive due process has been violated. Through an inappropriate narrowing of the issue the court makes the claim that the right in question is "a constitutional due process right to have hearing counsel present favorable evidence to the tribunal." App. 27 The Court goes on to say that "plaintiff has identified no authority, either controlling or persuasive, that would have informed a reasonable official in Atty. Cahill's position that he would violate Dr. Isaacs' constitutional rights by failing to provide the board [with exculpatory evidence]." App. 27

But Dr. Isaacs' right to due process in an evidentiary hearing is clearly established in the Constitution. And when a state actor, under the color of law, violates due process provisions, he violates Section 1983. It is not even disputed that the critical evidence was withheld by Cahill. Contrary to the District Court's order, a State Assistant Attorney General must have had awareness that his treatment of key evidence is subject to Due Process provisions. Here, Petitioner is not suggesting that every possible piece of helpful circumstantial evidence be presented by the investigator. Rather, he is stating that an investigator who is tasked to look at one specific issue, namely, Isaacs' disclosure of USC records, must fairly and reasonably compile the USC records themselves – which were under seal. Instead, Cahill denied the existence of these sealed records, after Isaacs had clearly provided them to Cahill.

26

The hearing in question was held without Dr. Isaacs present, it was held without a full recording of the hearing recorded or provided, it was held after Dr. Isaacs had made it clear to Attorney Cahill that there were two settlement agreements. Due to the lack of record at the hearing all we have to rely on is the order itself where the second settlement agreement is ignored completely, ignored because Atty. Cahill wanted an order that sent a message, an order that would prevent Dr. Isaacs from ever practicing medicine. Beyond omitting exculpatory evidence, this was an unfair hearing, and Attorney Cahill's role in making it that way ought to be considered by a jury.

It is irrefutable that Dr. Isaacs has alleged a clearly defined right was violated by Atty. Cahill's conduct. Dr. Isaacs had a right to due process in an evidentiary hearing, there is endless support for this proposition, including but not limited to the United States Constitution. *See Brady v. Maryland*, 373 U.S. 83 (1963) (finding "that Suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution.") *Giglio v. United States*, 405 U.S. 150 (1972) (finding that the prosecutions failure to remedy known false testimony was a violation of the due process clause), *Kyles v. Whitley*, 514 U.S. 419 (1993) (finding that a prosecutor should default to the disclosure of exculpatory evidence in any circumstances where the evidence may be relevant), *Brady v. Maryland*, 373 U.S. 83 (1963) (finding that the

27

suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment).

It is undisputed that Atty. Cahill was working on Dr. Isaacs' case as an investigator and prosecutor. In doing so it was his responsibility to produce the relevant evidence needed for the Board to make its ruling. There was ample evidence that Atty. Cahill was aware of the evidence, and that Dr. Isaacs had implored him to present it. The noticeable absence of even the spirit of that evidence in the Board of Medicine's order evidences a clear violation of Dr. Isaacs' constitutional right to due process that should not be allowed to stand.

———————◆———————

## CONCLUSION

Fourteen years into this saga, Respondents have yet to face adjudication on the merits or a proper investigation. Each time Dr. Isaacs asked someone or some entity to review the evidence, systemic failure resulted. Electronic evidence was spoliated, despite automatic safety mechanisms being in place. A Board of Medicine investigator suppressed the most central of evidence. A federal judge scouring a record couldn't find any of three official federal proceedings invoking the Rehabilitation Act.

Of note, in 2012 two competent authorities, the American Academy of Medical Colleges and the New

28

Hampshire Employment Tribunal, fully and promptly investigated Isaacs' Keck record disclosures. Each process was carried out to completion, and each exonerated Isaacs. This Counsel has represented Isaacs in varying capacity since 2012. It is difficult to fathom how, in stark contrast to the outcome of these two exonerations, Respondents have been able to evade any legal review on the merits of their outright assassination of Petitioner's career for not disclosing sealed Keck records.

Petitioner brought the matter to the District Court in New Hampshire seeking review under three fundamental remedies: The Rehabilitation Act, Title IX and Section 1983. In common, all of these represent legislative efforts to prevent unfair treatment of those who have been injured by those who hold power over them and their claims, and to allow for judicial review of that treatment. Without judicial review these laws cannot be effective. Dr. Isaacs respectfully requests certiorari, from this Court because his claims have not been treated fairly and fully in the courts below.

Respectfully submitted,

KEITH A. MATHEWS, ESQ.
ASSOCIATED ATTORNEYS
  OF NEW ENGLAND
587 Union Street
Manchester, NH 03104
Ph. 603-622-8100
keith@aaone.law